**UNITED STATES of America, Plaintiff,**

v.

**Louis MARKUS, Defendant.**

**No. Crim. A. 84–220.**

United States District Court,
D. New Jersey.

March 15, 1985.

W. Hunt Dumont, U.S. Atty. by Faith S. Hochberg, Asst. U.S. Atty., Newark, N.J., for plaintiff.

Peter V. Ryan, Asst. Federal Public Defender, Newark, N.J., for defendant.

## OPINION

SAROKIN, District Judge.

Defendant seeks to dismiss this action on double jeopardy and collateral estoppel grounds. An earlier indictment against defendant was dismissed by the court on jurisdictional grounds. Had defendant's motion in the earlier case been made prior to trial, no claim of ‘double

jeopardy could now arise. However, defendant intentionally awaited the impanelling of a jury before making his motion, for the very purpose of barring any later trial predicated upon a corrected indictment.

Although it is not necessary to develop a *per se* rule for the purpose of deciding this matter, it is difficult to envision any circumstances which would permit a defendant to utilize such strategy in order to avoid a retrial. If a defendant possesses the grounds to dismiss an indictment before actual trial, it would seem inappropriate to have jeopardy attach merely because defendant strategically determines to make such motion after trial commences. Under such circumstances, the defendant knowingly and unilaterally places himself in jeopardy and should not be permitted to benefit from such maneuvering. Counsel is not to be faulted for his efforts on his client's behalf, but the client should not be able to avoid criminal prosecution through such tactics.

The protection afforded by the double jeopardy clause is of great significance, but it should be afforded to a defendant when something is done *to* him during the course of a trial, rather than *by* him. The public has the right to expect that crimes will be prosecuted consistent with constitutional protections, but not so as to permit those protections to be utilized to manipulate the judicial system.

## BACKGROUND

On October 13, 1982, defendant Louis Markus was indicted on twenty counts of interstate transportation of stolen checks, in violation of 18 U.S.C. § 2314.[1] Each count of the indictment represented a single check for an amount less than $5,000, though the totality of the checks exceeded $24,000. *See* Defendant's App. at 46–4u. After the jury was impanelled, defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure

29. *See* Defendant's Supp.App., 1/3/83 Transcript at 11. *See also Id.* 1/4/83 Transcript at 102, 110; 1/5/83 Transcript at 2, 14, 21; Brief in Support of Motion for Judgment of Acquittal. The court reserved on such motion, and on January 5, 1983, the jury found defendant guilty on all counts. However, on January 28, 1983, the court dismissed the indictment for failure to meet the jurisdictional requirement of the statute. *United States v. Markus*, 555 F.Supp. 375 (D.N.J.1983). In its Opinion, the court described defendant's motion as one to dismiss the indictment, 555 F.Supp. at 376; additionally, the court described its actions as having dismissed the indictment. *Id.* at 378. However, the court also signed an Order which, after its recitational section, stated

> ... it is hereby
> ORDERED that
> 1) a judgment of acquittal be entered with respect to all counts; and
> 2) the indictment be, and hereby is dismissed.

Defendant's Brief at 5a. Such Order had been drafted by defendant; the government, while moving for reconsideration, *see id.* at 7a, did not, apparently, object to the form of such Order.

The decision of the court was affirmed by the United States Court of Appeals for the Third Circuit on November 16, 1983. *United States v. Markus*, 721 F.2d 442 (3d Cir.1983). The Circuit Court, however, described the issue before it in terms of the court's Order, and concluded that "the district court correctly dismissed the indictment in the present case and properly ordered the defendant acquitted on all counts." 721 F.2d at 444.

On August 8, 1984, defendant was again indicted, this time on one count of transporting twenty-seven stolen checks, totalling approximately $27,000, across state

---

**1.** Title 18 U.S.C. § 2314 states, in pertinent part
Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud....

\* \* \* \* \* \*

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

lines. Discovery has revealed that all twenty checks charged in the 1982 indictment have been made a part of the instant indictment, and that the seven remaining checks, which the government proffered as evidence in the first trial but apparently did not introduce into evidence over defendant's objection, total only $3420. *See* Defendant's App. at 13–16. Based upon these facts, defendant here moves to dismiss the indictment on grounds of double jeopardy and collateral estoppel.

DISCUSSION

A. *Double jeopardy*

Defendant Markus argues that the court's prior disposition of this matter constituted an acquittal and thus bars his re-prosecution for the same offense. While conceding that the instant indictment charges defendant with the same offense, the government counters that the court's ruling constituted a post-trial dismissal of the indictment rather than a sufficient determination of the merits of the case to be considered on acquittal. The parties support their arguments with excellent and exhaustive briefs.

■■■ There is no question that, if the prior decision in this matter constituted an acquittal, then re-prosecution of defendant would be prohibited by the double jeopardy clause of the fifth amendment to the United States Constitution. That clause, which states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," engenders "three basic protections":

It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Ohio v. Johnson,* —— U.S. ——, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984), quoting *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). It is the scope of the first such protection that is here implicated. That scope is particu-

larly broad; its proscription absolute. *See generally United States v. DiFrancesco,* 449 U.S. 117, 127–30, 101 S.Ct. 426, 432–34, 66 L.Ed.2d 328 (1980). Thus, acquittals are final, even if "based upon an egregiously erroneous foundation," *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978), quoting *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962), or if inconsistent with other aspects of a jury's verdict. *United States v. Powell,* —— U.S. ——, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984). The reasons are clear.

The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957), *quoted in, e.g., United States v. Maker,* 751 F.2d 614, 620–21 (3d Cir.1984).

■■■ Nonetheless, the question of what constitutes an acquittal has proven difficult to answer. For example, "the Double Jeopardy Clause 'imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside.'" *Tibbs v. Florida,* 457 U.S. 31, 40, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982) (emphasis in original), quoting *North Carolina v. Pearce, supra,* 395 U.S. at 720, 89 S.Ct. at 2078. Thus, appellate success does not equal acquittal, except where the evidence is held legally insufficient to have supported the lower court conviction. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). *See also Hudson v. Louisiana,* 450 U.S. 40, 44–45 n. 5, 101 S.Ct. 970, 972–973 n. 5, 67 L.Ed.2d 30 (1981). Even this standard is less than clear: double jeopardy

does not bar a re-trial where a guilty verdict is held, by a trial or appellate court, to be "against the weight of the evidence." *Tibbs v. Florida, supra,* 457 U.S. at 42–44, 102 S.Ct. at 2218–2220. And, of course, where a conviction is reversed for trial error, the double jeopardy clause does not prevent the defendant who urged such error on the appellate court from being re-tried. *See, e.g., Burks v. United States, supra,* 437 U.S. at 15, 98 S.Ct. at 2149 (citing cases). *See generally United States v. DiFrancesco, supra,* 449 U.S. at 131, 101 S.Ct. at 434. The reason for this exception is clear and oft-quoted: "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).

 Similarly, the grant of a defendant's motion for mistrial or the court's declaration of a mistrial on grounds of "manifest necessity" does not bar re-prosecution unless prosecutorial misconduct provoked such motion or declaration. *See, e.g., Arizona v. Washington, supra,* (prosecutor's request for mistrial justified by manifest necessity); *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976) (citing cases). *See generally United States v. DiFrancesco, supra,* 449 U.S. at 130, 101 S.Ct. at 433; *United States v. Scott,* 437 U.S. 82, 92–94, 98 S.Ct. 2187, 2194–2196, 57 L.Ed.2d 65 (1978). Finally, where a mistrial is declared because of a hung jury, re-trial is not barred on the ground of double jeopardy. *See Richardson v. United States,* —— U.S. ——, 104 S.Ct. 3081, 3085–86, 82 L.Ed.2d 242 (1984). Thus, mistrials also do not constitute acquittals.

The question here posed for resolution is that of whether, in fact, defendant was earlier acquitted in this case. Defendant's argument that he was is based upon the fact that his motion was one for a judgment of acquittal; that the court's Order, and its affirmance by the Third Circuit indicated that a judgment of acquittal was entered; and that, in fact, such judgment was based upon the government's having failed to make the factual showing necessary to convict defendant on each count. The government responds that the court's action constituted either a dismissal of the indictment or an arrest of judgment, *see* Fed.R.Crim.P. 34, and that its determination was therefore strictly legal.

The court, in the unique position of reviewing its own actions, agrees with the government. First, irrespective of its label, defendant's motion was for a dismissal of the indictment rather than for a judgment of acquittal, and the court's decision so reflected. Indeed, as the government points out, the prior use of the word "acquittal" by this court, and by the Court of Appeals which was, apparently, guided by this court's Order "has no talismanic quality for purposes of the Double Jeopardy Clause." *Serfass v. United States,* 420 U.S. 377, 392, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975) (citing cases). *See also United States v. Scott, supra,* 437 U.S. at 96, 98 S.Ct. at 2196 ("We have previously noted that 'the trial judge's characterization of his own action cannot control the classification of the action'"), quoting *United States v. Jorn,* 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 553 n. 7, 27 L.Ed.2d 543 (1971) (opinion of Harlan, J.). *See also Lee v. United States,* 432 U.S. 23, 30, 97 S.Ct. 2141, 2145, 53 L.Ed.2d 80 (1977) (distinguishing between dismissal and declaration of mistrial); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977); *United States v. Wilson,* 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975); *United States v. Sisson,* 399 U.S. 267, 270, 90 S.Ct. 2117, 2119, 26 L.Ed.2d 608 (1970); *United States v. Maker, supra,* 751 F.2d at 621 and n. 26. The standard that has emerged is that "a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" *Scott, supra,* 437 U.S. at 97, 98 S.Ct. at 2197, quoting *Martin*

*Linen Supply, supra,* 430 U.S. at 571, 97 S.Ct. at 1354 (brackets in original). The Third Circuit has recently applied this test to a proceeding terminated after the jury was sworn, but prior to a factfinding as to guilt or innocence. Thus, in *United States v. Maker, supra,* the court held that the district court's dismissal of an indictment for failure to allege facts sufficient to sustain a conviction on a charge of a single scheme to defraud did not bar an appeal, or a re-trial, of such case. 751 F.2d at 623–24. Though the district court had based its holding in part upon the transcript of prior civil proceedings and the government's opening, as well as the indictment, the Court of Appeals held that the factual determinations it made did not resolve an essential element of the case, and that the prior ruling was thus appealable. *Id.* at 623 and n. 30.

Here, there was overwhelming evidence, presented at the trial below, that defendant had indeed transported checks valued at greater than $5,000 across state lines, in violation of 18 U.S.C. § 2314. The jury so found, based upon an improper charge, *see* Defendant's Supp.App., 1/5/83 Transcript at 54, and the court, in its Opinion, agreed. 555 F.Supp. at 378 ("... defendant was clearly guilty of transporting and negotiating stolen checks and the jury so found.") While in complete agreement with the jury's verdict of guilt, the court nonetheless dismissed the indictment on what it saw as purely legal grounds, amounting, in effect, to drafting error in the indictment. Though defendant argues as persuasively as possible that in so ruling, the court took into account the facts as presented to the jury in the form of stipulations or of the checks themselves, *see* Defendant's Supp. App., 1/4/83 Transcript at 79, 85, such was clearly not the case. Indeed, the court's ruling was based solely upon and directed toward the indictment itself. The sufficiency of the evidence actually presented was not at issue, and was not considered by the court in arriving at its decision. Rath-

er, the court's decision was predicated upon an analysis of the indictment alone and would have been the same had no evidence been presented.

■■■■ Accordingly, the double jeopardy clause poses no obstacle to defendant's re-prosecution, and the motion to dismiss on double jeopardy grounds must be denied. Such result is in perfect accord with the caselaw. Just as appellate reversal of a conviction on grounds other than sufficiency of the evidence does not bar a re-trial, so does reversal by the trial court itself on such legal grounds pose no double jeopardy problem. *See, e.g., United States v. Wilson, supra,* 420 U.S. at 345, 95 S.Ct. at 1023 ("It is difficult to see why the rule [that an appellate court's reversal of a conviction on legal grounds does not bar further review, or retrial] should be any different simply because the defendant has gotten a favorable post-verdict ruling of law from the District Court rather than the Court of Appeals ..."). *See also United States v. Kopp,* 429 U.S. 121, 97 S.Ct. 400, 50 L.Ed.2d 336 (1976) (bench trial). *See generally United States v. DiFrancesco, supra,* 449 U.S. at 130, 101 S.Ct. at 433 (citing cases).[2] Similarly, the events of this case can be analogized to the successful motion for a mistrial which, as noted by the Third Circuit, constitutes an effective waiver of defendant's "valued right to have his trial completed by a particular tribunal," *United States v. DiFrancesco, supra,* 449 U.S. at 128, 101 S.Ct. at 432; *see United States v. Maker, supra,* 751 F.2d at 621 n. 25, and thus is the "result of the deliberate choice of the defendant" to obtain "the termination of the proceedings against him in the trial court without any finding by a court or jury as to his guilt or innocence...." *Id.* at 621, quoting *United States v. Scott, supra,* 437 U.S. at 100, 98 S.Ct. at 2198. Had the court thus dismissed the indictment prior to submission of the case to the jury, re-trial would not have been barred. *See United States v.*

**2.** To the extent that, as the government argues, defendant's motion was treated by the court as a motion in arrest of judgment, Fed.R.Crim.P. 34,

the double jeopardy clause does not prevent appeal or re-trial. *See Wilson, supra,* 420 U.S. at 344, 95 S.Ct. at 1022 (citing cases).

*Scott, supra,* 437 U.S. at 100, 98 S.Ct. at 2198 (Defendant "has not been 'deprived' of his valued right to go to the first jury [but if re-trial were barred] the public [would be] deprived of its valued right to 'one complete opportunity to convict those who have violated its laws.' "), quoting *Arizona v. Washington,* 434 U.S. at 509, 98 S.Ct. at 832. That the court chose to submit the case to the jury was appropriate, in light of the Supreme Court's expressed preference for so acting, in order that in the event of a reversal, the guilty verdict could be reinstated without the inefficiency and anxiety of a new trial. *See Scott, supra,* 437 U.S. at 100 n. 13, 98 S.Ct. at 2198 n. 13 (citing cases). *See also Government of the Virgin Islands v. Christensen,* 673 F.2d 713, 718–19 (3d Cir.1982). It was also a choice necessitated by the timing of defendant's motion, which could have been made before trial, since it was directed to the indictment alone, but was made much later, in an effort to gain some strategic advantage. The court acknowledged this effort in its Opinion, but concluded that the defendant had raised a jurisdictional problem, which could be noticed at any time. 555 F.Supp. at 376. However, the issue which emerged was not simple of resolution, and the court required time to research it and write an opinion. The court's timing in doing so was thus attributable to defendant and, for this reason too, cannot be said to have prejudiced him. *See Lee v. United States, supra,* 432 U.S. at 34, 97 S.Ct. at 2147. Rather, the court acted to upset a conviction which would otherwise have been reversed by the Third Circuit. Neither its timing,[3] nor its action can be said to constitute error. Nor in any event can re-trial after dismissal on the basis of a defective indictment, *see, e.g., Lee, supra,* 432 U.S. at 30–31, 97 S.Ct. at 2145–2146; *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), or any other reason unrelated to the guilt or innocence of a defendant, *see, e.g., Scott, supra,* (pre-indictment delay), be said to be barred by the double jeopardy clause.

Such is precisely the case here. The court's earlier determination that the indictment did not allege an offense under section 2314 depended upon nothing more than the language of the indictment itself; it relied upon no facts whatsoever. *See United States v. Appawoo,* 553 F.2d 1242, 1244–46 (10th Cir.1977). Thus, the court does not here "[afford] the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States, supra,* 437 U.S. at 11, 98 S.Ct. at 2147. *See also United States v. DiFrancesco, supra,* 449 U.S. at 128, 101 S.Ct. at 432. Indeed, in the first prosecution of this matter, the government had all the evidence it needed to convict defendant of the offense alleged, and defendant was, in fact, properly found guilty. However, such evidence was introduced pursuant to a fatally flawed indictment, and as a result, the indictment had to be dismissed. Unfortunately for defendant, the government, and the court, such dismissal occurred subsequent to trial, due to the intentional timing of defendant's motion. However, defendant's having waited for jeopardy to attach before raising such motion, *see United States v. Maker,* 751 F.2d at 620 n. 22, citing *Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978), does not mean that dismissal precludes a second trial, for the attachment "is the beginning rather than the end of our analysis." *Maker, supra,* 751 F.2d at 620 n. 22. As a dismissal which most certainly did not resolve any factual elements of the offense charged in defendant's favor, and which, in fact, resolved no factual elements at all, the court's action clearly does not preclude a re-trial, irrespective of the label placed on defendant's motion, in

---

**3.** *Scott* established that, even absent the delay in moving which occurred here and in *Lee,* midtrial dismissals do not bar re-trial, as had been held in *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), upon which defendant relies. *See* Defendant's Supp. Brief at 9–10, citing *Finch v. United States,* 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977). By overruling *Jenkins, Scott* rendered the court's decision to reserve on defendant's motion until after the verdict totally without prejudice to defendant.

the court's Order or in the Third Circuit's Opinion.

Of course, such dismissal nonetheless redounds to defendant's benefit. He is now subject to a maximum fine of $10,000 and term of imprisonment of ten years; under the prior indictment, these numbers were multiplied twenty fold. More important, he is now entitled to a second opportunity to prove his innocence, having failed the first time. While he must therefore go through another trial, the court here concludes that such trial "is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." *Scott, supra,* 437 U.S. at 91, 98 S.Ct. at 2194. *See also Tibbs, supra,* 457 U.S. at 44, 102 S.Ct. at 2219; *DiFrancesco, supra,* 449 U.S. at 131, 101 S.Ct. at 434. Defendant's motion to dismiss on double jeopardy grounds is denied.

### B. *Collateral estoppel*

Defendant also contends that the government ought to be collaterally estopped from pursuing the instant indictment, arguing that the specific factual issues presented were resolved against defendant by the court's prior decision dismissing the indictment and entering a judgment of acquittal. However, the court has already ruled, *supra,* that no such factual issues were resolved in defendant's favor and that no such acquittal actually occurred. Rooted as it is in the double jeopardy clause, *see Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970), the use of collateral estoppel in the criminal context depends first, upon the existence of an acquittal and second, upon a realistic and rational approach to whether "the jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444, 90 S.Ct. at 1194. Of course, collateral estoppel is broader than double jeopardy: "Even though there has been no former acquittal of the particular offense on trial, a prior judgment of acquittal on related matters has been said to be conclusive as to all that the judgment de-

termined." *United States v. DeAngelo,* 138 F.2d 466, 468 (3d Cir.1943), *cited in United States v. Keller,* 624 F.2d 1154, 1157 (3d Cir.1980). Here, however, there has been no judgment of acquittal, only the dismissal of an indictment as improperly drafted. Further, the only facts determined by a factfinder, albeit based upon an erroneous jury instruction, were determined contrary to defendant's position, and would indicate that he in fact committed the crime charged herein. Thus, both the application of the doctrine of collateral estoppel to this particular case and the policy concerns engendered by criminal law enforcement in general, *see Standefer v. United States,* 447 U.S. 10, 24–25, 100 S.Ct. 1999, 2008–2009, 64 L.Ed.2d 689 (1980), require that defendant's motion to dismiss on collateral estoppel grounds be denied.

### C. *Bail*

The court understands that until at least July 17, 1985, defendant will remain incarcerated and thus an application for bail at this time is premature.

An appropriate order will issue.