**UNITED STATES of America, Appellee,**

v.

**Steve HONEY, Appellant.**

**No. 81–2400.**

United States Court of Appeals, Eighth Circuit.

Submitted May 20, 1982.

Decided June 23, 1982.

A. Watson Bell, Searcy, Ark., for appellant.

George W. Proctor, U. S. Atty. by Robert J. Govar, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before BRIGHT, Circuit Judge, and GIBSON and STEPHENSON, Senior Circuit Judges.

STEPHENSON, Senior Circuit Judge.

Appellant Honey appeals from his jury conviction on Count III of an indictment

charging that during the period March 14—April 14, 1981, he transported in interstate commerce from Jackson County, Arkansas, to Montegut, Louisiana, three diesel motors having a value of more than $5,000, which appellant then knew were stolen, in violation of 18 U.S.C. § 2314.

The sole issue on appeal is whether the district court[1] erred by permitting the jury to aggregate the value of the three diesel motors in order to find the $5,000 jurisdictional amount required by the statute.

The evidence disclosed that a Detroit diesel motor was stolen in Jackson County, Arkansas, on or about March 14, 1981, and was sold by appellant to Ronald Macalusa at Montegut, Louisiana, on March 16, 1981. Thereafter, a four-cylinder Deutz diesel motor was discovered missing in Jackson County on March 23, 1981, and sold by appellant to Macalusa on March 24, 1981. A four-cylinder Perkins diesel motor was discovered missing from a field in Jackson County on April 13, 1981, and was sold by appellant to Macalusa on April 14, 1981. All three motors were purchased by Macalusa at his place of business in Montegut, Louisiana.

The district court, in instructing the jury and in denying appellant's motion for judgment of acquittal, recognized that proof that the stolen goods transported in interstate commerce had an aggregate value of at least $5,000 was an essential element of the offense charged.

In *United States v. Grenagle*, 588 F.2d 87 (4th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979), the court stated: "The jurisdictional amount requirement of 2314 was intended to limit federal court jurisdiction and federal court prosecutions to interstate transportation of stolen goods having substantial value * * * and to avoid overtaxing the resources of the De-

partment of Justice." *Id.* at 88 (citations omitted). Similarly, in *United States v. Chandler*, 586 F.2d 593, 602 (5th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 483 (1979), the court observed:

Although we are quite sure that the $5,000 limitation was not designed to protect those who transport property of a lesser value but rather to avoid overtaxing the federal judicial system, its effect is to leave the punishment of such persons to the states and to make the limitation an essential part of the federal crime.

The district court found that a "reasonably minded" jury could not have concluded that any one of the three motors, individually, had an independent separate value of $5,000 or more.[2] It then became necessary to determine whether a conviction would stand if the three motors described in Count III had an aggregate value of at least $5,000. After reviewing the language of the statute defining value (18 U.S.C. § 2311)[3] and the legislative history of the statute, the district court determined that Congress meant what was said in section 2311—that the aggregate value of all goods referred to in a single indictment or count shall constitute the value thereof. The court disagreed with appellant's contention that it was also essential that "the shipments have enough relationship so that they may properly be charged as a single offense * * *." *Schaffer v. United States*, 362 U.S. 511, 517, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960), *affirming United States v. Schaffer*, 266 F.2d 435 (2d Cir. 1959); *United States v. Perry*, 638 F.2d 862, 870 (5th Cir. 1981). In *Schaffer v. United States, supra*, 362 U.S. at 517, 80 S.Ct. at 948, the Supreme Court stated:

Petitioners also contend that, since the individual shipments with which they were connected amounted to less than

1. The Honorable Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas, denied appellant's motion for judgment of acquittal and imposed a sentence of twenty months imprisonment.

2. This finding is not disputed on appeal.

3. 18 U.S.C. § 2311 states in pertinent part: " 'Value' means the face, par, or market value, whichever is the greatest, and the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value thereof."

$5,000 each, the requirements of the statute as to value were not present. However, it appeared at the trial that the total merchandise shipped to each petitioner during the period charged in the several counts was over $5,000, even though each individual shipment was less. The trial court permitted the aggregation of the value of these shipments to meet the statutory limit, and it is this that is claimed to be error. A sensible reading of the statute properly attributes to Congress the view that where the shipments have enough relationship so that they may properly be charged as a single offense, their value may be aggregated. The Act defines "value" in terms of that aggregate. The legislative history makes clear that the value may be computed on a "series of transactions."

(footnotes omitted). It was the district court's view that the language in *Schaffer*, while appropriate under the facts of that case, was not applicable in the instant case. The district court stated that the transactions in *Schaffer*, unlike those involved in the instant case, were not "separate and distinct."

Ultimately, the district court expressed the view that:

[I]f one defendant, by completely separate and independent shipments, transports property which, in the aggregate, is valued at $5,000 or more within the period of the statute of limitations, then, according to this Court's analysis, he could be charged under 18 U.S.C. § 2314, and it would make no difference whether the interstate shipments had a common origin or a common destination. Even without proof of any prearrangement or conspiracy, if one person transports enough property across state lines, knowing same to have been stolen, within the period of the statute of limitations, the federal prosecutor may, if he wishes, prosecute him under section 2314.

*United States v. Honey,* 542 F.Supp. 129 at 134 (E.D.Ark. 1981).

The district court concluded that the transactions, though separate and distinct, were properly referred to in a single count of the indictment and there was no error in allowing the value of the individual shipments referred to in Count III to be aggregated in order to reach the $5,000 requirement.

We agree that the three transactions were properly included in the single count of the indictment and that there was no error in allowing the jury to aggregate the value of the three motors in order to find the $5,000 value requirement. However, we find it unnecessary to reach the issue of whether "separate and distinct transactions" may be aggregated in reaching the jurisdictional amount. We are persuaded that there was sufficient relationship in the three transactions here involved to warrant their inclusion in a single count and that their value could properly be aggregated in reaching the jurisdictional amount.

According to the testimony of appellant, all of the stolen motors were acquired from the same person, Albert Brashears. All shipments included in Count III were made within one month, March 14—April 14, 1981. Each shipment of stolen diesel motors originated in Jackson County, Arkansas, and was sold to and delivered to the same person, Ronald Macalusa, at Montegut, Louisiana. All shipments were delivered by pickup truck within a day or two after the motors were discovered missing. Each of the stolen motors were paid for by check drawn by Macalusa on Mac's Welding and Boat Builder's account at the Terrebonne Bank & Trust Company, Houma, Louisiana.

More importantly, the testimony of the buyer, Ronald Macalusa, indicates that appellant and Macalusa contemplated a number of transactions after the first motor (Detroit diesel) was sold by appellant to Macalusa on March 16, 1981.[4] The tran-

4. Macalusa testified that the check to appellant (Exhibit 31) was originally dated March 16, the date of the sale, and, since the banks were

closed, he cashed it for appellant on that date. Macalusa later changed the date to March 25 when he took it to the bank "to get my cash

script then discloses the following testimony:

Q   When is the next time you saw Mr. Honey?

A   I believe it was toward the end of March there when he returned with another engine.

Q   Had you discussed this other engine previously?

A   I believe he had asked me if I could use other engines, and I told him yes.

Q   Did you indicate what kind of engine you might be interested in?

A   He had mentioned that he had Perkins and Deutz and different engines there, and I told him most any kind.

Q   Most any kind?

A   Right.

Q   Do you recall when he brought this second engine down?

A   Just toward the latter part of March.

As previously indicated, appellant delivered and sold to Macalusa a Deutz diesel on March 25, 1981, and a Perkins diesel on April 14, 1981.

The record thus reveals that the parties contemplated further transactions which were ultimately consummated.

Under the circumstances, we hold there was sufficient relationship in the three transactions to warrant aggregating the value of the three motors for the purpose of satisfying the jurisdictional amount of $5,000.

Affirmed.

money back out of the bank." The check was          drawn on Macalusa's business bank account.